# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Aetna Casualty and Surety Co.

v.

Boiler Brick & Refractory Co., Inc.,
Ohio Casualty Ins. Co.,
and James J. Druitt

March 23, 1960

BY JUDGE JOHN J. BUTZNER, JR.

The Aetna Casualty and Surety Company instituted this attachment to recover compensation and medical expenses paid to James J. Druitt or on his behalf under the Workmen's Compensation Act. In order to understand the issues involved, it is necessary to refer briefly to a case which preceded.

James J. Druitt, an employee of the Wiegel Engineering Company (hereinafter called Wiegel) received personal injuries arising out of and in the course of his employment. He received workmen's compensation and medical payments in the amount of $4,273.65, which were paid by Aetna as the compensation carrier for Wiegel.

Druitt also instituted suit in the Circuit Court of Spotsylvania County against Boiler Brick & Refractory Company, Inc. (hereafter called Boiler Brick), which he charged was a negligent third party. In this case, he was awarded damages in the amount of $6,500.00 by a jury, and final judgment was entered on the verdict on May 8, 1959. Druitt, however, declined to accept payment of the $6,500.00 and interest when it was tendered to him by Ohio Casualty Insurance Company (hereinafter called Ohio), the liability carrier for Boiler Brick.

In the meantime, a controversy arose between Aetna and Druitt concerning Aetna's right of subrogation to recover the workmen's compensation and

medical expenses that it had paid to Druitt or on his behalf. Boiler Brick, Ohio, and Aetna sought to have the controversy resolved by reopening the common law proceeding. Druitt resisted on the ground that the judgment in his case against Boiler Brick had become final and that the jurisdiction of the Court had been terminated by the lapse of twenty-one days from the date of the entry of the judgment. The Court sustained Druitt and held that no further proceedings could be heard in the common law action, but that the parties could pursue without prejudice such other actions or suits as they deemed advisable.

Aetna had simultaneously instituted attachment proceedings against Boiler Brick, Ohio, and Druitt. Aetna accordingly proceeded with its attachment, and in due time, the case came on to be heard.

When Aetna filed its attachment, it was still making compensation payments to Druitt. Subsequently, the payments were terminated by order of the Industrial Commission. When the case came on to be heard, Aetna's claim exceeded the amount set forth in its attachment petition. Upon motion of Aetna, the Court granted leave to amend the petition to include the full amount of Aetna's payments.

The following facts are not in dispute.

Boiler Brick and Ohio are indebted to Druitt in the amount of $6,560.58 (which includes interest) as a result of the judgment which Druitt recovered in his action against Boiler Brick.

For the same accident for which Druitt sued Boiler Brick, Aetna paid compensation to Druitt in the amount of $3,600.00 and medical expenses in the amount of $673.65, for a total of $4,273.65. These payments have now been terminated. Aetna has not been reimbursed.

Aetna bases its claim upon §§ 65-108 and 65-38 of the Code of Virginia 1950. Section 65-108 provides for the subrogation of the insurance carrier to the employer's rights. Section 65-38 creates a statutory assignment to the employer of any right to recover damages which the injured employee may have against any other person for such injury and further provides that the employer shall be subrogated to such right. This section also authorizes the employer to institute suit against the "other party." Aetna, however, did not institute suit, nor did it petition for reimbursement pursuant to § 65-39 of the Code of Virginia, 1950, as amended.

Aetna contends that § 65-39 is not the exclusive means for the enforcement of its assignment and right of subrogation after the employee has brought suit against the negligent third party. Aetna insists that attachment is also a proper remedy. Aetna further contends that even if § 65-39 is the

exclusive remedy, Druitt is estopped from relying upon Aetna's failure to exercise its right under this section.

In this connection, Aetna urges that it was led to believe by correspondence and statements made to it by counsel for Druitt that its right of subrogation and reimbursement for compensation paid would be protected and that consequently there was no need for it to proceed under § 65-39.

On the other hand, Druitt contends that § 65-39 is exclusive after the employee brings suit and that since Aetna did not proceed under this section, Aetna has lost its right to subrogation. Druitt also contends that the doctrine of estoppel is inapplicable under the facts and the law.

The first question to consider is whether Druitt is estopped. Aetna introduced three witnesses who testified on the issue of estoppel. The first was Ernest C. Fisher, Claims Manager for Aetna. Mr. Fisher testified to the effect that in August 1958, Mr. H. E. Crockett, an attorney for Druitt, telephoned him and, in the course of the conversation, assured him that Aetna's interest would be protected in the event that Druitt was successful in obtaining a judgment. Aetna then called Mr. H. E. Crockett who testified that he did not make the assurances about which Mr. Fisher had previously testified and that he had no authority to represent Druitt in regard to compensation. The next witness called by Aetna was Charles H. Querin, branch manager for Ohio. Mr. Querin testified that at the conclusion of the trial of Druitt against Boiler Brick, Mr. Denis R. Ayers, an attorney for Druitt, stated that he had agreed with Aetna that he would protect their interest and it was not necessary for Querin to be concerned about Aetna's name being on the draft. The defendant, Druitt, offered no testimony.

"The authorities uniformly hold that estoppels in pais are not to be taken by argument or inference but must be certain to every intent. The burden of proof rests on the party relying upon an estoppel, and it must be made to appear affirmatively by clear, precise, and unequivocal evidence." *Newport News, etc. v. Lake*, 101 Va. 334, 343, 43 S.E. 566, 569 (1903); *Fitzgerald v. Fitzgerald*, 194 Va. 925, 930, 76 S.E.2d 204, 207 (1953); 7 Michie's Jurisprudence, *Estoppel*, § 3.

The plaintiff's evidence does not satisfy the strict requirements for the establishment of estoppel. The Court is, therefore, of the opinion that the defendant, Druitt, is not estopped.

The controlling question, therefore, is whether § 65-39 provides the exclusive remedy for the employer, or the insurance carrier, to enforce the assignment and right of subrogation after the employee sues the negligent third party.

Sections 65-38 and 65-108 of the Code of Virginia, 1950, create a statutory assignment and right of subrogation in order that the employer, or the compensation insurance carrier, may collect from the negligent third party the amount that has been paid to the employee pursuant to the Workmen's Compensation Act. While §§ 65-38 and 65-39 set forth procedures by which this right of subrogation and assignment may be asserted, nothing in the statutes expressly states that these procedures are exclusive. The right of subrogation and the benefits of the assignment are not qualified by any statutory provision limiting their enforcement. Clearly, it was the intention of the General Assembly to afford an injured employee compensation from an industrial accident, but it was not intended that the employee should recover twice. *Stone v. George W. Helm Co.*, 184 Va. 1051, 37 S.E.2d 70 (1946); *Noblin v. Randolph Corp.*, 180 Va. 345, 23 S.E.2d 209 (1942). Thus, it has been indicated that when an employee who has received compensation sues the negligent third party, he sues for his own benefit and the benefit of his employer. *Feitig v. Chalkley*, 185 Va. 96, 103, 38 S.E.2d 73, 76 (1946).

The recent history of § 65-39 indicates that it was not intended to provide the exclusive procedure for an employer to follow after the employee had instituted suit against the negligent third party. Prior to 1956, the employer could intervene to recover the amount of expenses for medical, surgical, and hospital attention and supplies and funeral expenses incurred by the employer under the Act. It was not until the Amendment of 1956 that the employer could intervene to recover, in addition to the aforementioned items, compensation paid under the Act. It is thus clear that prior to 1956, § 65-39 did not provide a complete remedy for the employer with regard to the assignment and right of subrogation. It is true that the amendment of 1956 now grants an employer a complete remedy, but there is nothing in the amendment to indicate that the legislature intended to withdraw from the employer procedural remedies which of necessity were available prior to the 1956 amendment. Such a drastic change in the 1956 Amendment would undoubtedly have been made explicit.

No Virginia decision on the precise question involved in this case has been called to the attention of the Court. However, dictum in the opinion of *Noblin v. Randolph Corp.*, 180 Va. 345, 358, 23 S.E.2d 209, 214 (1942), charts the course which the Court believes it should follow. There, the Supreme Court of Appeals pointed out that the 1936 Amendment to § 12 of the Workmen's Compensation Act (which is now § 65-39) permits or authorizes the employer to join in the action brought by the injured employee against the negligent third party. Thus, it would appear that it is not mandatory for the employer to follow

the procedure set forth in § 65-39, but rather that he is permitted or authorized to do so and that, consequently, other remedies are available to him.

This conclusion becomes more compelling when the facts and the holding in the *Noblin* case are considered. In that case, the injured employee brought suit against the negligent third party. He recovered judgment but was unable to collect it. Thereafter, he instituted his claim for Workmen's Compensation and was met with the defense that since he had instituted suit against the third party, he was barred from receiving compensation. The Supreme Court of Appeals held that the procurement of the unsatisfied judgment was not a bar and that the employee was entitled to receive compensation. It is apparent that the employer had not intervened in the employee's suit against the third party prior to verdict, pursuant to § 12 (now § 65-39). Indeed, the employer had paid no compensation. Nevertheless, the Court stated: "If and when the employer or the carrier has complied with the conditions stated in the statute, the right of subrogation may be enforced *by a proper proceeding* in the Circuit Court of Halifax County where the judgment was obtained." (Italics added.) *Noblin v. Randolph Corp.*, 180 Va. 345, 363, 23 S.E.2d 209, 216 (1942).

It is, therefore, obvious that the Supreme Court of Appeals did not consider § 12 of the Act (now § 65-39) to be the exclusive remedy of the employer or the compensation insurance carrier.

The fact that in the *Noblin* case no compensation had been paid at the time of the employee's verdict, while in the case at bar some compensation had been paid before verdict and some afterwards, is not a compelling distinction. The time when compensation is paid is not material. When the claim for compensation is made, "the employer's rights as assignee of the employee relate back and are the same as those of the employee at the time of the injury." *Stone v. George W. Helm Co.*, 184 Va. 1051, 1060, 35 S.E.2d 70, 74 (1946).

It is, therefore, the conclusion of the Court that the provisions of §§ 65-38 and 65-39 for the enforcement of the benefits of the assignment and the right of subrogation are not exclusive and that the plaintiff properly could enforce its rights by attachment.

Aetna proved compensation and medical payments in the amount of $4,273.65. It also asserted a claim for expenses in the amount of $136.59. However, these expenses are not included in the statutory assignment or right of subrogation. For this reason, this portion of the claim is not allowed.

Counsel are requested to draft an order granting judgment for the plaintiff in the amount of $4,273.65.