Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and Kinser, JJ., and Poff, Senior Justice

COMMONWEALTH OF VIRGINIA, EX REL.
VIRGINIA DEPARTMENT OF CORRECTIONS

                                          OPINION BY
v.  Record No. 991079        JUSTICE LAWRENCE L. KOONTZ, JR
                                          April 21, 2000
DEMETRIOUS ERIC BROWN, A/K/A, ETC.

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Melvin R. Hughes, Jr., Judge


     In this appeal, we consider whether general district courts have the statutory authority to issue transportation orders for prisoners confined within a state correctional facility in order that they may appear in civil proceedings.

                            BACKGROUND

     On July 23, 1996, Demetrious Eric Brown, a prisoner confined at the Buckingham Correctional Center, purchased a television at the prison commissary from Thomson Consumer Electronics (Thomson), an out-of-state corporation.  On August 27, 1997, while confined in the Greensville Correctional Center to which he had been transferred, Brown filed a warrant in debt in the City of Richmond General District Court against Thomson alleging that the television was defective.  Brown sought $4,000 in damages for breach of contract and breach of warranty.

     Brown requested that the general district court issue witness subpoenas for "L. Cox," the business manager of the Buckingham Correctional Center, and for David Lee Wright and

Lawrence Johnson, fellow prisoners of Brown at the Greensville Correctional Center.  Brown met Johnson and Wright after being transferred to the Greensville Correctional Center, and neither was confined at the Buckingham Correctional Center when Brown purchased the television.

No appearance was made in the general district court by either party on the original return date of September 22, 1997. The case was rescheduled for trial on November 6, 1997.  The letter informing Brown of the new trial date indicated that a transportation order would be issued for his appearance on that date.

On September 25, 1997, the general district court issued a transportation order with special instructions directing the Virginia Department of Corrections, rather than the Richmond City Sheriff's Office, to transport Brown to Richmond for the trial on November 6, 1997.  On October 7, 1997, the general district court issued the subpoenas Brown had requested and issued additional transportation orders directing the Virginia Department of Corrections to transport Wright and Johnson to appear as witnesses at the trial.

The subpoena to Cox and the three transportation orders issued by the general district court were the first notice to the Department of Corrections of Brown's lawsuit.  On October 21, 1997, the Office of the Attorney General, on behalf of the

Department of Corrections and Cox (collectively, the Commonwealth), filed a motion to quash the three transportation orders and the subpoenas in the general district court. Citing Code § 8.01-410, the Commonwealth asserted that only circuit courts are authorized to issue prisoner transportation orders in civil cases. In addition, the Commonwealth asserted that no provision in any of the statutes governing the operation of the general district courts grants that authority to the general district courts. Accordingly, the Commonwealth contended that the transportation orders were void.

On November 12, 1997, having continued the trial of Brown's lawsuit until January 20, 1998, the general district court advised Brown, Thomson, and the Commonwealth by letter that, barring notice of an earlier hearing date or waiver of a hearing, the motion to quash would be resolved immediately prior to trial.[1] On November 18, 1998, the Commonwealth responded to the general district court's letter, contending that the motion to quash was ripe for decision without the necessity of a hearing, but that if a hearing were required, it could be conducted by telephone. Brown responded by refusing to consent

[1]From this point in the proceedings, Thomson, though it was advised of all the proceedings relevant to this case, took no active part in the dispute between Brown and the Commonwealth.

3

to the general district court's ruling on the motion to quash without a hearing.

Thereafter, the general district court, by letter to the parties, expressed concern that the Commonwealth's argument in favor of its motion to quash, if sustained, would bar the general district court from issuing prisoner transportation orders in criminal cases, and asked the parties to submit briefs on this point. The Commonwealth responded by letter brief and, relying primarily upon Code § 19.2-267, asserted that while both the circuit courts and the general district courts have the authority to issue prisoner transportation orders in criminal cases, in civil cases that authority is limited to the circuit courts. Brown's response did not directly address the court's concern, but, rather, contended that no statute prohibited the general district court from issuing prisoner transportation orders in civil cases and that he had an absolute right to be transported to court in order to conduct civil litigation.

In an order entered December 12, 1997, the general district court ruled that because any reference to general district courts is "expressly" omitted therein, Code § 8.01-410 does not preclude the issuance of prisoner transportation orders by general district courts in civil cases. The court reasoned that construing the statute otherwise would result in an unconstitutional deprivation of a prisoner's due process rights.

4

The court concluded that Code § 16.1-69.27, which authorizes a general district court to "issue all appropriate orders . . . in aid of the jurisdiction conferred upon" the court, grants the general district court the authority to issue transportation orders of prisoners in both civil and criminal cases.

On December 22, 1997, the Commonwealth appealed the decision of the general district court to the Circuit Court of the City of Richmond (the trial court). The trial court received letter briefs from Brown and the Commonwealth reiterating the positions they had taken in the general district court.

By letter opinion dated January 19, 1999, the trial court stated that Code § 8.01-410 did not preclude general district courts from issuing transportation orders and that "[t]he matters other than § 8.01-410 to be considered" as discussed by the general district court in its ruling led the trial court to conclude that "it is within the power and right of the General District Court to order the transport[ation of prisoners] as witnesses in proceedings there." By order dated February 22, 1999, the trial court adopted by reference the reasoning set forth in the general district court's December 12, 1997 order, and dismissed the Commonwealth's motion to quash. We awarded the Commonwealth this appeal.

DISCUSSION

Initially, we stress that the issue we consider in this appeal is limited to a determination of the authority of the general district courts to issue prisoner transportation orders in civil cases. While the record reflects that in the proceedings below the Commonwealth appears to have recognized that these courts have the authority to issue such orders in criminal cases, that issue is not before us. See Code § 19.2-267. Accordingly, nothing in this opinion is to be construed to limit the authority of the general district courts to issue prisoner transportation orders in criminal cases.

As a general proposition, the authority of any court to issue prisoner transportation orders in civil cases is undoubtedly an outgrowth of legislative recognition of the modern view that prisoners, after judgments of conviction and while incarcerated, have a right to bring civil actions. See Dunn v. Terry, Administratrix, 216 Va. 234, 239, 217 S.E.2d 849, 854 (1975); see also Cross v. Sundin, 222 Va. 37, 38-39, 278 S.E.2d 805, 805-06 (1981). It does not necessarily follow, however, that such prisoners have an absolute right, as Brown contends here, to be transported to court in order to conduct civil litigation initiated by them. After all, prisoners, as a result of their conduct in committing criminal offenses, have forfeited their unfettered freedom of movement during their

6

period of incarceration.  Their right to conduct civil litigation in the courts of this Commonwealth during that time is necessarily limited by that circumstance and appropriately balanced against public safety concerns presented by transporting prisoners from prisons to court.

The current version of Code § 8.01-410,[2] in clear and unambiguous terms, specifically addresses just such situations and provides the judicial authority and the mechanism by which the patent conflict between prisoners' incarceration and their ability to exercise the right to conduct civil litigation is appropriately resolved.  This statute provides that:

> Whenever any party in a civil action in any circuit court in this Commonwealth shall require as a witness in his behalf, a convict or prisoner in a correctional or penal institution as defined in § 53.1-1, the court, on the application of such party or his attorney may, in its discretion and upon consideration of the importance of the personal appearance of the witness and the nature of the offense for which he is imprisoned, issue an order to the Director of the Department of Corrections to deliver such witness to the sheriff of the county or the city, as the case may be, who shall go where such witness may then be.  Under such conditions as shall be prescribed by the superintendent of the institution, such officer shall carry the convict to the court to testify as such witness, and after he

---

[2]Code § 8.01-410 was amended effective July 1, 1998 while this case was under consideration by the trial court.  That amendment removed from the circuit court's discretion the decision whether or not to assess costs.  This amendment is not material to the issue raised in this appeal and, accordingly, we will consider the statute in its current form.

7

shall have so testified and been released as such witness, carry him back to the place whence he came.

If necessary the sheriff may confine the convict for the night in a convenient city or county correctional institution.

Under such rules and regulations as the superintendent of such an institution may prescribe, any party to a civil action in any circuit court in this Commonwealth may take the deposition of a convict or prisoner in the institution, which deposition, when taken, may be admissible in evidence as other depositions in civil actions.

The party seeking the testimony of such prisoner shall advance a sum sufficient to defray the expenses and compensation of the officers, which the court shall tax as other costs.

This statute expressly grants to the circuit courts the authority to issue prisoner transportation orders in civil cases. Indeed, the statute is expressly limited to civil cases "in" the circuit courts and makes no reference to general district courts. In addition, this statute commits to the discretion of the court the appropriate balance to be considered between "the importance of the personal appearance of [the prisoner] and the nature of the offense for which he is imprisoned" in reaching the decision to grant or deny a request for a prisoner transportation order or to permit the prisoner's evidence to be produced by deposition.[3] For the reasons that

_____

[3]Of course, there is no prohibition against producing the prisoner's evidence by other means such as video conference or telephone.

8

follow, we agree with the Commonwealth's assertion that the trial court erred in failing to hold that the authority to issue prisoner transportation orders in civil cases granted by Code § 8.01-410 is vested solely in the circuit courts.

Code § 8.01-410 is the only statute that addresses the issuance of prisoner transportation orders in civil cases initiated by prisoners.[4] The maxim of statutory construction expressio unius est exclusio alterius is applicable here. This maxim provides that where a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute. See, e.g., Turner v. Wexler, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992). Thus, by using this principle as an aid to construing a statute, we have held that "[w]hen a legislative enactment limits the manner in which something may be done, the enactment also evinces the intent that it shall not be done another way." Grigg v. Commonwealth, 224 Va. 356, 364, 297 S.E.2d 799, 803 (1982).

By expressly granting the specific authority to issue prisoner transportation orders in civil cases in this statute only to the circuit courts, we are of the opinion that the General Assembly intended to exclude the general district courts

---

[4]Cf. Code § 8.01-654 (habeas corpus proceedings limited to circuit courts).

9

from the authority to issue prisoner transportation orders in civil cases.  Were this not so, a general district court, unconstrained by statutory limitations imposed upon the circuit courts, would be able to order the transportation of any prisoner to appear in a civil case, regardless of the importance of the prisoner's personal appearance, the inherent security concerns, the mode of transportation, or its cost.  Indeed, contrary to these statutory mandates, the orders issued by the general district court in the present case would have placed the onus of transporting the prisoners on the Department of Corrections, not the local sheriff's office, with the expense therefore devolving to the state taxpayers.  Clearly, such authority is contrary to the legislative intent expressed in Code § 8.01-410.

We turn now to the trial court's ruling that Code § 16.1-69.27 grants authority to the general district courts to issue prisoner transportation orders in civil cases.  This statute provides that:

> A judge of a district court may take affidavits and administer oaths and affirmations in all matters and proceedings, <u>may issue all appropriate orders</u> or writs, including orders appointing guardians ad litem in all proper cases, <u>in aid of the jurisdiction conferred upon him</u>, and may certify transcripts of the records and proceedings of the court for use elsewhere.  But he shall have no authority to take acknowledgments to deeds or other writings for purposes of recordation.

(Emphasis added).

The contention that the general district courts have the authority to issue prisoner transportation orders in civil cases is based upon the phrases here italicized.  That contention is without merit.  This statute is one of broad, general application.  Nowhere in this statute, nor anywhere else in the statutes delineating the limited jurisdiction of the general district courts, is there a specific grant of the authority to order the transportation of prisoners to appear as witnesses in civil cases.  Thus, only by the most expansive reading of Code § 16.1-69.27 could the authority of the general district courts be interpreted to include the authority to issue prisoner transportation orders in civil cases.  By contrast, Code § 8.01-410 is a specific statute addressing prisoner transportation orders in civil cases.

In such circumstances as this, we have employed the established rule of statutory construction that when one statute speaks to a subject generally and another deals with an element of that subject specifically, the statutes will be harmonized, if possible, and if they conflict, the more specific statute prevails.  Virginia Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979); see also County of Fairfax v. Century Concrete Services, Inc., 254 Va. 423, 427, 492 S.E.2d 648, 650 (1997); Dodson v. Potomac Mack Sales & Service, Inc., 241 Va.

11

89, 94-95, 400 S.E.2d 178, 181 (1991). This is so because a specific statute cannot be controlled or nullified by a statute of general application unless the legislature clearly intended such a result. Ingram v. Commonwealth, 1 Va. App. 335, 341, 338 S.E.2d 657, 660 (1986); see also Peoples Bank of Danville v. Williams, 449 F.Supp. 254, 257 (W.D.Va. 1978).

To the extent Code § 16.1-69.27 and Code § 8.01-410 can be said to be in conflict in that the former appears to grant broad, general authority to the general district courts to issue appropriate orders in aid of their jurisdiction, while the latter specifically grants the authority to issue prisoner transportation orders in civil cases to the circuit courts, the latter must prevail. Accordingly, we hold that Code § 16.1-69.27 does not authorize general district courts to order the transportation of prisoners to appear in civil cases.

Finally, Brown's contention that such a limitation on the authority of the general district courts may lead to a deprivation of a prisoner's due process rights is wholly without merit. While it is true that a prisoner does not forfeit all constitutional rights when he is incarcerated, incarceration requires "the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948).

12

Thus, while the Commonwealth may restrict a prisoner's right to personally appear in a civil case, this restriction does not preclude a prisoner from asserting a civil claim before the courts.  If his claim falls within the jurisdictional limits of the circuit court, he may bring the claim there and, under Code § 8.01-410, the circuit court will have the discretion to enter a transportation order to provide for his court appearance.  Moreover, Code §§ 53.1-221 and 53.1-222 provide a prisoner convicted of a felony and sentenced to confinement in a state correctional facility the opportunity to petition a circuit court to appoint a committee who may sue "in respect to all claims or demands of every nature in favor of" the prisoner. The committee may elect to sue on behalf of the prisoner in the circuit court or the general district court as the circumstances of a particular case may dictate will best protect the rights of the prisoner.

Similarly, there is no violation of a prisoner's right to due process inherent in a limitation on his witnesses' ability to appear in person in the general district court in a civil case.  Alternative means of producing evidence, by de bene esse deposition or telephonic hearing, for example, are more than adequate to assure the prisoner a fair hearing.

13

CONCLUSION

For these reasons, we will reverse the judgment of the trial court and remand the case with instructions that the case be further remanded to the general district court for further proceedings consistent with the views expressed in this opinion.

<u>Reversed and remanded</u>.