# CIRCUIT COURT OF THE CITY OF ROANOKE

Becky Sorrell Sellers

v.

Wendy Lucas et al.

November 28, 2000

Case No. CL93001068

BY JUDGE CLIFFORD R. WECKSTEIN

Becky S. Sellers, an employee who received workers' compensation benefits and later collected a judgment against a third party for negligently inflicting injury upon her, contends that the workers' compensation carrier lost its right to reimbursement because it failed to file a motion or petition before her verdict against the tortfeasor.

When Sellers was injured at work, she sought and received disability and medical benefits, which were provided by her employer's insurance carrier, Cincinnati Insurance Co., and approved by the Virginia Workers' Compensation Commission. Wendy Lucas, a physical therapist, was one of the persons whose treatment of Sellers was covered by workers' compensation and paid for by Cincinnati. Alleging that she suffered injury because Lucas rendered this treatment improperly, Sellers successfully sued Lucas for professional malpractice. The Supreme Court declined review, and Lucas paid the judgment. Cincinnati seeks reimbursement, out of this recovery, for workers' compensation benefits that it paid to Sellers or on her behalf. Sellers asserts that Virginia Code § 65.2-310 precludes Cincinnati from pursuing this claim, because it did not file a motion or petition before Sellers's verdict against Lucas.

An injured employee covered by the Virginia Workers' Compensation Act may exercise her right to receive benefits under the Act and also pursue claims against third party tortfeasors. However, the Code provides that her

employer and its insurer are subrogated to her rights to recover against the third party:

> A claim against an employer under this title for injury or death benefits shall operate as an assignment to the employer of any right to recover damages which the injured employee, his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party. The amount of compensation paid by the employer or the amount of compensation to which the injured employee or his dependents are entitled shall not be admissible as evidence in any action brought to recover damages.

Code § 65.2-309(A).

"The purpose of the statute," the Court of Appeals of Virginia has explained, "is to reimburse an employer who is compelled to pay compensation as a result of the negligence of a third party and to prevent an employee from obtaining a double recovery of funds. . . . The employer's subrogation rights are triggered automatically when the injured employee files a claim against the employer and thereby assigns to the employer any claims against third parties." *Tomlin v. Vance International, Inc.*, 22 Va. App. 448, 452, 470 S.E.2d 599 (1996) (citations omitted).

Code § 65.2-310 provides that:

> In any action by an employee . . . against any person other than the employer, the court shall, on petition or motion of the employer at any time prior to verdict, ascertain the amount of compensation paid and expenses for medical, surgical and hospital attention and supplies . . . incurred by the employer under the provisions of this title and deduct therefrom a proportionate share of such amounts as are paid by the plaintiff for reasonable expenses and attorney's fees as provided in § 65.2-311; and, in event of judgment against such person other than the employer, the court shall in its order require that the judgment debtor pay such compensation and expenses of the employer, less said share of expenses and attorney's fees, so ascertained by the court out of the amount of the judgment, so far as sufficient, and the balance, if any, to the judgment creditor.

Cincinnati did not file a petition or motion prior to verdict. The question, as the parties have posed it, is whether Code § 65.2-310 provides the exclusive way in which the employer and its compensation carrier can enforce their rights to reimbursement under Code § 65.2-309(A), after the employee has sued the negligent third party. Or, phrased more starkly, is the situation as Sellers described it in a reply memorandum: "Cincinnati, as the workers' compensation insurer, is entitled to nothing from Ms. Sellers because it did not properly protect any lien that it may have had."

There is no Virginia Supreme Court decision directly on point. It is appropriate, however, to consider the decisions of other Virginia circuit courts "as persuasive authority." *Cf. Avery v. Virginia Retirement System*, 33 Va. App. 210, 532 S.E.2d 348 (2000) (*en banc*).

I am persuaded that, in an opinion written forty years ago, *Aetna Casualty and Surety Co. v. Boiler Brick & Refractory Co.*, 48 Va. Cir. 572 (1960), Judge John D. Butzner, Jr., correctly and convincingly answered the question posed in this case. At the time, Judge Butzner was judge of the Circuit Court of Spotsylvania County. He is now senior judge of the United States Court of Appeals for the Fourth Circuit. Although Virginia's Workers' Compensation Act has been recodified since 1960, the General Assembly has not materially altered the relevant statutory provisions.

I cannot improve upon Judge Butzner's language and logic. Code §§ 65-38 and 65-39 were the statutory ancestors of §§ 65.2-309 and 65.2-310. These statutes, Judge Butzner wrote:

create a statutory assignment and right of subrogation in order that the employer, or the compensation insurance carrier, may collect from the negligent third party the amount that has been paid to the employee pursuant to the Workmen's Compensation Act. While §§ 65-38 and 65-39 set forth procedures by which this right of subrogation and assignment may be asserted, nothing in the statutes expressly states that these procedures are exclusive. The right of subrogation and the benefits of the assignment are not qualified by any statutory provision limiting their enforcement. Clearly, it was the intention of the General Assembly to afford an injured employee compensation from an industrial accident, but it was not intended that the employee should recover twice. *Stone v. George W. Helme Co.*, 184 Va. 1051, 37 S.E.2d 70 (1946); *Noblin v. Randolph Corp.*, 180 Va. 345, 23 S.E.2d 209 (1942). Thus, it has been indicated that when an employee who has received compensation sues the negligent third party, he sues for

his own benefit and the benefit of his employer. *Feitig v. Chalkley*, 185 Va. 96, 103, 38 S.E.2d 73, 76 (1946). . . .

No Virginia decision on the precise question involved in this case has been called to the attention of the Court. However, dictum in the opinion of *Noblin v. Randolph Corp.*, 180 Va. 345, 358, 23 S.E.2d 209, 214 (1942), charts the course which the Court believes it should follow. There, the Supreme Court of Appeals pointed out that the 1936 Amendment to § 12 of the Workmen's Compensation Act (which is now § 65-39) permits or authorizes the employer to join in the action brought by the injured employee against the negligent third party. Thus, it would appear that it is not mandatory for the employer to follow the procedure set forth in § 65-39, but rather that he is permitted or authorized to do so and that, consequently, other remedies are available to him.

This conclusion becomes more compelling when the facts and the holding in the *Noblin* case are considered. In that case, the injured employee brought suit against the negligent third party. He recovered judgment but was unable to collect it. Thereafter, he instituted his claim for Workmen's Compensation and was met with the defense that since he had instituted suit against the third party, he was barred from receiving compensation. The Supreme Court of Appeals held that the procurement of the unsatisfied judgment was not a bar and that the employee was entitled to receive compensation. It is apparent that the employer had not intervened in the employee's suit against the third party prior to verdict, pursuant to § 12 (now § 65-39). Indeed, the employer had paid no compensation. Nevertheless, the Court stated: "If and when the employer or the carrier has complied with the conditions stated in the statute, the right of subrogation may be enforced *by a proper proceeding* in the Circuit Court of Halifax County where the judgment was obtained." (Italics added.) *Noblin v. Randolph Corp.*, 180 Va. 345, 363, 23 S.E.2d 209, 216 (1942).

It is, therefore, obvious that the Supreme Court of Appeals did not consider § 12 of the Act (now § 65-39) to be the exclusive remedy of the employer or the compensation insurance carrier.

*See also Floyd v. O'Briskie*, 33 Va. Cir. 341 (1994), in which the Circuit Court of Fairfax County held that an employer and its workers' compensation carrier do not lose their right to reimbursement, out of the proceeds of a judgment against a third party tortfeasor, if they fail to file a motion or petition prior to verdict in accordance with § 65.2-310. (There were factors in that case

which distinguish it from the case at bar. Judge Rosemarie Annunziata, who decided that case, is now a judge of the Court of Appeals of Virginia.)

Cincinnati's position also is supported by the plain language of § 65.2-109 and by principles of statutory construction. Code § 65.2-109 uses the terms "assignment" and "subrogated." "An assignment is 'the act of transferring to another all or part of one's property, interest, or rights'." *Hughes v. Cole*, 251 Va. 3, 26, 465 S.E.2d 820 (1996) (quoting *Black's Law Dictionary* 119 (6th ed. 1990)). "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." Dan B. Dobbs, *Law of Remedies*, § 4.3, at 404 (2d ed. 1993), quoted in *Black's Law Dictionary* 1440 (7th ed. 1999); *see Aetna Casualty & Surety Co. v. Whaley*, 173 Va. 11, 3 S.E.2d 395 (1939); *Federal Land Bank v. Joynes*, 179 Va. 394, 18 S.E.2d 917 (1942). "Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed. . . . We must also assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute." *Barr v. Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672 (1990).

No language in § 65.2-310 explicitly limits the employer's rights of assignment and subrogation to those cases in which motions or petitions are filed before verdicts against third party tortfeasors. Courts cannot engraft such words upon the statute. *See Barr v. Town & Country Properties, supra.* "The maxim of statutory construction *expressio unius est exclusio alterius* is applicable here. This maxim provides that where a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute. *See, e.g., Turner v. Wexler*, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992)." *Department of Corrections v. Brown*, 259 Va. 697, 704, 529 S.E.2d 96 (2000). Code § 65.2-310 "speaks in specific terms" about what a carrier must do to perfect and collect a lien on funds still in the hands of the judgment debtor. The "implication arises" that the General Assembly did not intend thereby to preclude a carrier from seeking reimbursement after judgment proceeds leave the debtor's hands.

Code § 65.2-307 (a statute that, like §§ 65.2-309 and 65.2-310, is a part of the Workers' Compensation Act) demonstrates that, when the General Assembly wishes to establish an exclusive remedy, it knows how to unequivocally say so. *Cf. Alger v. Commonwealth*, 19 Va. App. 252, 256, 450 S.E.2d 765 (1994) ("Statutes which relate to the same subject matter should be read, construed, and applied together so that the legislature's intention can

be gathered from the whole of the enactments."); for other exclusive remedies, *see also, e.g.,* § 33.1-320.2. (bridge compact); § 38.2-5002 (birth-related neurological injury compensation program); § 50-73.108(E) (partnership charging orders); § 51.5-46(C) (Virginians with Disabilities Act).

Sellers and Cincinnati had two areas of disagreement. The first, of course, was whether Cincinnati's failure to file a petition or motion before Sellers's verdict against Lucas wiped out the carrier's right to reimbursement. The second, which would not have arisen had the first question been decided against Cincinnati, is the amount that Cincinnati is entitled to be reimbursed from the proceeds of the judgment against Lucas.

Sellers and Cincinnati entered into a written agreement. Stating that "Sellers and Cincinnati disagree about the extent and amount of Cincinnati's subrogation lien," they "memorialized the terms under which the judgment proceeds [were] disbursed pending resolution of the dispute between Sellers and Cincinnati." Under this contract, a portion of the judgment proceeds was disbursed to Cincinnati; counsel are holding a portion in escrow pending judicial decision; and the balance has been disbursed to Sellers and her lawyers, free of any claim by Cincinnati except for a claim for interest.

Now that I have decided that Cincinnati did not, by failing to file a motion or petition before the verdict, lose its right to reimbursement, I must receive evidence in order to determine the proper disposition of the amount remaining in escrow. Unless the parties can resolve this question by agreement, counsel will please schedule an appropriate hearing and tender a duly endorsed order drawn in accordance with and incorporating this letter opinion and preserving Sellers's objections.